1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   EARL L. RILEY, III,                    Case No.  1:21-cv-01785-JLT-HBK
12                Plaintiff,                 FINDINGS AND RECOMMENDATIONS TO
                                             GRANT DEFENDANT'S MOTION FOR
13        v.                                 SUMMARY JUDGMENT[1]
14                                           (Doc. No. 40)
15   ACCO ENGINEERING SYSTEMS, INC.,
16                Defendant.
17

18         Pending before the Court is Defendant's Motion for Summary Judgment, filed June 10,

19   2024.  (Doc. No. 40, "MSJ").  Defendant filed a Reply on June 28, 2024 (Doc. No. 47), and

20   Plaintiff filed an untimely Opposition[2] on July 8, 2024 (Doc. No. 50).  With leave of the Court,

21   Defendant filed a Sur-Reply on July 23, 2024.  (Doc. Nos. 57, 58).  For the reasons discussed

22   below, the undersigned recommends the Court grant Defendant's MSJ because there is no

23   genuine dispute of material fact that Defendant and its employees did not take any adverse

24   employment action against Plaintiff based on his race, nor did they create a hostile work

25

26   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2023).  *See also* Doc. No. 49.
27   [2] Pursuant to Local Rule 230(c), "[o]pposition, if any, to the granting of [a] motion shall be in writing and
     shall be filed and served no later than fourteen (14) days after the motion was filed."  (E.D. Cal. 2023).  In
28   this case, Plaintiff's Opposition was due no later than June 24, 2024.

environment resulting in Plaintiff's constructive discharge.

**BACKGROUND**

### A.  Procedural History

On December 17, 2021, Plaintiff Earl L. Riley, III ("Plaintiff" or "Riley"), proceeding pro se and *in forma pauperis*, filed this civil action against Defendant ACCO Engineering Systems Inc. ("Defendant" or "ACCO") stemming from events that occurred in Kingsburg, CA from July to September 2021.  (Doc. No. 1 at 2; Doc. No. 4).  The Complaint alleges Defendant subjected Plaintiff to adverse conditions of employment, harassment, and constructive discharge on the basis of his race in violation of Title VII of the Civil Rights Act of 1964.

The gravamen of the Complaint is that while employed by Defendant as a sheet metal worker on a major construction project, Plaintiff was required to work alone while most other employees worked in pairs.  (Doc. No. 1 at 2).  Further, on September 29, 2021, Plaintiff discovered in ACCO's trailer at his work site a poster depicting a chimpanzee in overalls and a hard hat with the words "Sheetmetal [sic] Workers," which Plaintiff found to be "insensitive, offensive and highly inappropriate."  (Doc. No. 1 at 2).

The Court screened the Complaint, found it stated a cognizable claim under Title VII and 42 U.S.C. § 1983, and subsequently directed service upon Defendant.  (Doc. Nos. 1, 13, 14).  Defendant timely answered the Complaint.  (Doc. No. 19).  After the court issued a Case Management Scheduling Order and the Parties exchanged discovery, Defendant filed the instant Motion for Summary Judgment.  (Doc. No. 40).

### B.  The Pleadings and Record Before the Court

Defendant filed the instant merits-based motion for summary judgment and in support submits: (1) a Memorandum of Points and Authorities (Doc. No. 40-1); (2) a Joint Statement of Undisputed Facts (Doc. No. 40-2); a Separate Statement of Undisputed Facts (Doc. No. 40-3); the Declaration of Melanie Sowell (Doc. No. 40-4); and the Declaration of Joey Hernandez (Doc. No. 40-5).  In support, Defendant also submits the declaration of Veena Bhatia, counsel for Defendant, accompanied by several exhibits.  (Doc. Nos. 41, 41-1, 41-2, 41-3).

ACCO asserts it is entitled to summary judgment on Plaintiff's claims because he fails to

1    allege facts that amount to harassment, discrimination, or constructive discharge.  (Doc. No. 40 at

2    2).  Moreover, Defendant contends that Plaintiff is not entitled to punitive damages because he

3    provides no evidence that Defendant acted with the requisite malice or reckless indifference.  (*Id*.

4    at 27).  After Plaintiff failed to file an opposition, in its preemptive Reply, ACCO asserts that it is

5    entitled to summary judgment for the additional reason that Plaintiff failed to timely file an

6    Opposition to Defendant's MSJ as required by Rule 230(c) and has thus waived any arguments

7    against granting summary judgment.  (*See generally* Doc. No. 50).

8         Plaintiff's Opposition, which was filed two weeks past the deadline prescribed by the

9    Local Rules, (Doc. No. 50).  Plaintiff does not attempt to explain or justify the delay in filing his

10   Opposition.  Plaintiff includes a "Notice of Motion Opposing Defendant's Motion for Summary

11   Judgment," (Doc. No. 50); a Separate Statement of Undisputed Facts (Doc. No. 51); a Joint

12   Statement of Undisputed Facts (Doc. No. 52); and a Memorandum of Points and Authorities

13   (Doc. No. 53).

14        Plaintiff argues there is a genuine dispute as to whether Defendant discriminated against

15   him, noting that "[t]he incident where the Plaintiff saw a monkey wearing construction gear

16   labeled 'Sheet Metal Workers' is a key fact in dispute, along with the differing opinions and

17   explanations of the working conditons [sic] experienced by the Plaintiff."  (Doc. No. 50 at 2).  He

18   contends that the September 29, 2021 incident "is emblematic of racially discriminatory conduct

19   towards the Plaintiff in the workplace" and that the incident "coupled with the disparate treatment

20   in working conditions, establishes a pattern of discrimination."  (*Id*. at 1-2).  In his Notice of

21   Motion, Plaintiff cites various state laws, federal statutes, and decisional law that purport to

22   support his claims, but provides only brief summaries of these authorities that suggest their

23   relevance to the facts here.  (*Id*. at 4-6).

24        In his Memorandum of Points and Authorities, Plaintiff largely repurposes Defendant's

25   moving brief, making changes and additions to indicate his disagreement with Defendant's

26   positions, but does not cite any additional evidence of his own.  (*See generally* Doc. No. 53,

27   "Opposition Brief").  Plaintiff asserts, for example, that he "continually did work that required at

28   least two people for production and safety reasons" and that when someone else was assigned to

the same task they were given a partner. (*Id*. at 9). Plaintiff does not cite to any source in the record for these assertions. Likewise, Plaintiff contends that his supervisor, Joey Hernandez, "showed preferential treatment to some Journeyman sheet metal workers," but does not provide any factual detail to support this claim or cite to any portion of the record. (*Id*.). Plaintiff acknowledges that Hernandez's motives in determining work assignments "is still yet to be determined" and also notes "it is yet to be determined if Hernandez had seen the picture of the monkey in construction gear" prior to Plaintiff texting him a photo of the poster on September 29, 2021, but adds that he "felt that Hernandez was directly or indirectly responsible for the discriminatory behavior because it was located in his office." (*Id*. at 9, 11). Plaintiff asserts, without further explanation, that the Joint Statement of Undisputed Material Facts "can establish any and all of his claims." (*Id*. at 15). He also contends that "[l]ooking at the totality of the circumstances[,] individual actions were created by the employer which created an intolerable condition of employment[,] and a reasonable person in Plaintiff's position would choose to resign." (*Id*.).

In a Sur-Reply, Defendant contends that the Court should disregard Plaintiff's late-filed Opposition, and even if it does consider the Opposition, should find it unpersuasive for several reasons. (*See generally* Doc. No. 58). First, because Plaintiff "relies heavily on Defendant's [Separate Statement of Material Facts] without providing any response or evidence of his own; he also relies on Defendant's declarations without providing declarations of his own." (*Id*. at 2). Defendant notes that Plaintiff promised to submit additional evidence in support of his claims, such as "witness testimonies, expert opinions, direct testimonies, written or electronic communications, employment records, comparative evidence, statistical data, and circumstantial evidence . . ." but failed to do so. (Doc. No. 58 at 4, n. 4) (citing Doc. No. 50 at 3 ¶ 7). Plaintiff likewise claimed that he "has evidence that Defendant engaged in a discriminatory or discriminatory practices with malice or with reckless indifference to the federal [sic] protected rights of an aggrieved individual." (Doc. No. 50 at 17). Defendant notes that Plaintiff never provided any such evidence in discovery, at his deposition, or in the Opposition, thus summary judgment is warranted on Plaintiff's employment discrimination claim. (Doc. No. 58 at 5-6)

Defendant argues that Plaintiff's constructive discharge claim amounts to speculation and that the undisputed facts show that Defendant "did not make any adverse employment decision toward Plaintiff" based on his race.  (Doc. No. 58 at 4).  Defendant points out that Plaintiff was praised for his work performance, was kept on the job by Hernandez when other workers were laid off, was granted his requests for time off, and never heard derogatory racial remarks at work.  (Doc. No. 58 at 4).  Defendant contends that Plaintiff seeing an offensive image on the work site on one occasion was not so severe and pervasive as to amount to a hostile work environment, thus Defendant is entitled to summary judgment on that claim as well.  (*Id*. at 5).

### C.     Plaintiff's Belated Opposition

Because Plaintiff's opposition was untimely, the court may disregard it under Local Rule 230(c).  Considering Plaintiff's pro se status and the public interest in having cases resolved on the merits, however, the Court elects to consider Plaintiff's arguments.  *See Bumagat v. Shillinger*, 2019 WL 1382495, at *5 n.3 (E.D. Cal. Mar. 27, 2019), report and recommendation adopted, 2019 WL 2465138 (E.D. Cal. June 13, 2019).

### LEGAL STANDARD FOR SUMMARY JUDGMENT

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002). A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion. *Anderson*, 477 U.S. at 252. And, where a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to have admitted the validity of those facts. *See* Fed. R. Civ. P. 56(e)(2).

The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. The omission to an argument, document, paper, or objection is not to be construed that the Court did not consider the argument, document, paper, or objection.

Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of issuing this Order.

## UNDISPUTED MATERIAL FACTS

The parties submit a Joint Statement of Undisputed Material Facts ("JSUMF").  (Doc. Nos. 40-2, 52).  In addition, both Plaintiff and Defendant submit Separate Statements of Material Facts.  (Doc. Nos. 40-3, 51).  Plaintiff's Separate Statement of Material Facts ("SSMF") reproduces Defendant's Separate Statement but does not explicitly indicate whether he admits or denies each of Defendant's factual averments, as required by Local Rule 260(b).  Instead, Plaintiff rephrases some of the averments in Defendant's SSMF to indicate modest disagreements with Defendant's statement of facts.  (*Compare, e.g.*, Doc. No. 40-3 at 3 ¶ 6 (Wherein Defendant states, "Plaintiff believes that he was discriminated against, harassed, and constructively discharged based only on the facts that he had to work alone on assignments in 2021 and seeing the picture on September 29, 2021 and for no other reasons") with Doc.  No. 51 at 3 ¶ 6 (Wherein Plaintiff states, "Plaintiff felt discriminated against after seeing the highly inppropriate [sic] and highly offensive picture of a monkey wearing construction gear labeled 'sheet metal works.'").

While Plaintiff appears to dispute some of Defendant's factual averments, he cites to the same portions of the record as Defendant's SSMF and, as a general matter, the distinctions he makes do not appear to be material.  (*Compare, e.g.*, Doc. No. 40-3 at 4 ¶ 9 (Wherein Defendant states, "Hernandez directly supervised Plaintiff's work, and the work of the other Sheet Metal Workers who were of varying races, including Hispanic, Asian and African American" with Doc. No. 51 at 3 ¶ 9 (Wherein Plaintiff states, "Hernandez closely supervised the work of the plaintiff, other employees and all other activities at the Kingsburg T-Mobile jobsite.")).  Because Plaintiff does not properly deny Defendant's factual assertions and "includ[e] with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial," the Court deems these facts in the SSMF undisputed.  *See* Fed. R. Civ. P. 56(e)(2).

Having reviewed the record, the Court finds the following facts to be material and undisputed, unless otherwise noted.

- In 2021, ACCO Engineering Systems Inc. ("ACCO") was involved in a major construction project in Kingsburg, California for the T-Mobile Call Center (the "T-Mobile Project"), a 100,000 square foot call center.  (Doc. No. 40-5 at 2 ¶ 4).

- Joey Hernandez ("Hernandez") was the General Foreman supervising Sheet Metal Workers at the T-Mobile Project.  His responsibilities included supervising ongoing projects, the overall installation of ductwork and other components of the HVAC systems, assigning daily work tasks, and managing the construction activities.  (Doc. No. 40-2 at 2 ¶ 3; Doc. No. 40-5 at 2-5 ¶¶ 4, 6, 8, 17; (Doc. No. 41-1 at 88:20-90:24).

- In July 2021, Hernandez interviewed and hired Plaintiff Earl L. Riley III as a journeyman sheet metal worker for the T-Mobile Project based on a referral from an ACCO foreman who had previously worked with Plaintiff.  (Doc. No. 40-2 at 2 ¶ 1; Doc. No. 40-5 at 3 ¶ 7; Doc. No. 41-1 at 66:2-22, 67:1-18, 67:24-68:2).

- Plaintiff is African American and has worked as a Sheet Metal Worker for a number of years, including prior work for ACCO.  Prior to his employment on the T-Mobile Project in 2021, Plaintiff worked for ACCO as a journeyman Sheet Metal Worker from September 5, 2018 to approximately March 2020 on various projects.  (Doc. No. 40-2 at 2 ¶ 2; Doc. No. 40-5 at 3 ¶ 7; Doc. No. 40-4 at 2, 7-8 ¶ 5; Doc. No. 41-2 at 43; Doc. No. 41-1 at 61:4-21, 62:3-16, 62:24-63:2, 63:7-10, 94:16-20, 95:3-96:17).

- In his prior work for ACCO, Plaintiff did not experience any discrimination or harassment, and enjoyed working for ACCO.  (Doc. No. 40-2 at 2 ¶ 5; Doc. No. 40-4 at 4 ¶ 13; Doc. No. 41-1 at 63:21-64:20; Doc. No. 41-2 at 82:7-24).

- Hernandez directly supervised Plaintiff's work and the work of the other sheet metal workers at the T-Mobile Project, who were of varying races, including Hispanic, Asian and African American.  (Doc. No. 40-2 at 2 ¶ 4).

- As General Foreman, Hernandez assigned daily work tasks based on his assessment of the project's needs at any given time.  He determined and assigned work based on the competencies of the available journeyman sheet metal workers and their stated preferences.  (Doc. No. 40-5 at 3 ¶ 8).

8

- Hernandez assigned Plaintiff and three other journeymen to the installation of seismic bracing, duct boots and roof curbs, tasks which Hernandez believed could be completed by a single journeyman.[3]  (*Id.* at ¶ 9).

- Plaintiff was not the only journeyman to work by himself on daily work tasks.  For larger duct work installations and tasks that could not be performed by a single journeyman, Hernandez assigned these tasks exclusively to two specific journeyman sheet metal workers, one of which was African American.  (*Id.*).

- Plaintiff was not always around the other sheet metal workers to be able to observe whether they worked alone or in pairs.  Plaintiff admitted at this deposition he does not know what Hernandez's motive was in assigning him work and was unaware of how Hernandez actually determined work assignments.  (Doc. No. 41-1 at 68:23-76:6).

- Plaintiff never complained to Hernandez or ACCO Human Resources that he did not want to perform individual work tasks, that he needed the assistance of another journeyman, or that he felt he was being treated in an unfair or discriminatory manner based on the work assignments.  (Doc. No. 40-2 at 2 ¶ 6).

- Neither Hernandez nor any other ACCO employee ever said anything in Plaintiff's presence that Plaintiff felt was derogatory toward African Americans and Plaintiff never reported such an incident to Hernandez or ACCO Human Resources.  (Doc. No. 40-2 at 2 ¶ 6, Doc. No. 41-1 at 68:23-76:6, 76:17-79:3, 81:6-85:3).

- Hernandez believed that Plaintiff performed his duties well, and based on his good performance, Hernandez maintained Plaintiff's employment through a round of layoffs he instituted.  (Doc. No. 40-2 at 2-3 ¶¶ 8-9; Doc. No. 40-5 at 4, 10, 12 ¶¶ 11-14; Doc. No. 41-3 at 17-18; Doc. No. 41-1 at 91:6-93:5; Doc. No. 41-2 at 63:7-72:2).

  ////

---

[3] In his opposition, Plaintiff asserts that some of the tasks he was assigned should have been, "for safety and production reasons" assigned to more than one worker, but does not specify which tasks these are, nor cite to any portion of the record to support this claim.  Even if the Court were to credit Plaintiff's statement, this is not a material fact not would it constitute a dispute of fact as to what *Hernandez* believed were appropriate tasks to assign to a single worker.

- Hernandez indicated to Plaintiff several times that he was doing good work, never disciplined, counseled, or reprimanded Plaintiff regarding any aspect of his work performance, and allowed Plaintiff to take requested time off.  (Doc. No. 40-2 at 2-3 ¶¶ 8-9; Doc. No. 40-5 at 4, 10, 12 ¶¶ 11-14; Doc. No. 41-3 at 17-18; Doc. No. 41-1 at 91:6-93:5; Doc. No. 41-2 at 63:7-72:2).

- ACCO maintained a trailer for the sheet metal workers at the T-Mobile site that was left unlocked during the workday.  Anyone, including workers from trades not associated with ACCO, could access the trailer.  The nonsupervisory sheet metal workers, such as Plaintiff, generally spend little to no time inside the trailer given that it does not have a break area, clock-in station, or restroom.  (Doc. No. 40-5 at 4 ¶ 16; Doc. No. 41-1 at 85:11-19, 111:9-14).

- Prior to September 29, 2021, Plaintiff had entered the sheet metal workers' trailer only three to five times.  (Doc. No. 41-1 at 86:17-87:8).

- On the morning of September 29, 2021, Hernandez conducted his daily meeting with the sheet metal workers between approximately 6:15 a.m. and 6:25 a.m.  (Doc. No. 40-5 at 5 ¶ 19; Doc. No. 41-1 at 99:2-105:22).

- After the sheet metal meeting on September 29, 2021, when Plaintiff went into the ACCO office trailer to get gloves and other protective equipment, he saw a poster hanging in the trailer depicting a chimpanzee dressed in a construction outfit with the text, "sheetmetal workers" on it.  (Doc. No. 40-2 at 3 ¶ 10; Doc. No. 41-2 at 47-49; Doc. No. 41-1 at 81:6-85:3, 94:16-20, 95:3-96:17, 96:23-98:19, 99:2-105:22, 107:19-109:5; Doc. No. 41-2 at 60:22-62:1).

- When Plaintiff entered the trailer, he saw a man in an unlabeled, neon construction vest sitting at the desk.  Plaintiff had never seen the man before and did not know if he was an ACCO employee.  The man left the trailer without saying a word as soon as he saw Plaintiff.  (Doc. No. 41-1 at 99:2-105:22, 109:22-111:4; Doc. No. 41-2 at 60:22-62:1).

////

////

10

- Prior to September 29, 2021, Plaintiff had never seen the specific poster, or any similar poster or image at any ACCO worksite, including the T-Mobile Project worksite.  (Doc. No. 40-2 at 3 ¶ 11; Doc. No. 40-5 at 5-6 ¶ 22; Doc. No. 41-1 at 63:21-64:20, 81:6-85:3).

- Plaintiff does not know who put up the poster, whether an ACCO employee did so, and he does not know whether the poster was directed at him.  (Doc. No. 40-2 at 3 ¶ 12; Doc. No. 40-5 at 5, 14-16 ¶ 21; Doc. No. 41-3 at 19-21; Doc. No. 41-1 at 81:6-85:3, 99:2-105:22, 109:22-11:4; Doc. No. 41-2 at 63:7-72:2, 75:9-76:12).

- Plaintiff took pictures of the poster on his cell phone, took the poster down, grabbed his tools, got in his car, texted Hernandez the photo and stated that he quit based on what he saw in the office.  (Doc. No. 40-2 at 3 ¶ 13; Doc. No. 40-5 at 5, 14-16 ¶ 21; Doc. No. 41-1 at 14; Doc. No. 41-1 at 99:2-105:22, 107:19-109:5; Doc. No. 41-2 at 60:22-62:1, 63:7-72:2, 83:16-84:22, 103:4-11).

- Plaintiff's text message attaching the picture was the first time Hernandez had been made aware of its existence.  Hernandez attempted to call and text Plaintiff for additional information.  (Doc. No. 40-2 at 3 ¶ 14; Doc. No. 40-5 at 5-6 ¶¶ 21-24; Doc. No. 41-3 at 19-21; Doc. No. 41-1 at 99:2-105:22, 109:22-111:4; Doc. No. 41-2 at 63:7-72:2).

- Plaintiff never responded or contacted Hernandez ever again.  (Doc. No. 40-2 at 3 ¶ 14; Doc. No. 40-5 at 6 ¶ 21; Doc. No. 41-3 at 19-21; Doc. No. 41-1 at 99:2-105:22, 109:22-111:4; Doc. No. 41-2 at 63:7-72:2).

- After receiving Plaintiff's text message, Hernandez immediately opened an investigation and sought to track down the picture.  (Doc. No. 40-5 at 5-6 ¶¶ 22-24).

- Hernandez later closed the investigation because there were no witnesses, he could not confirm the photograph,[4] could not confirm its location, and Plaintiff had not responded to his request for assistance and information.  (Doc. No. 40-5 at 5-6 ¶¶ 22-24; Doc. No. 40-4 at 4 ¶ 14).

////

---

[4] As noted, Plaintiff removed the picture.

- Plaintiff never returned to work at the T-Mobile Project, and never contacted ACCO to assist with the investigation into the poster.  (Doc. No. 40-2 at 4 ¶ 18; Doc. No. 41-1 at 106:4-107:10; Doc. No. 41-2 at 63:7-72:2).

- Plaintiff did not report the poster that he saw on September 29, 2021, to anyone in ACCO's Human Resources department.  (Doc. No. 40-2 at 3 ¶ 15; Doc. No. 41-1 at 106:4-107:10; Doc. No. 41-2 at 76:15-77:3, 85:12-97:9).

- Plaintiff believes Hernandez was directly responsible for the picture being up solely based on the fact that he was the supervisor on the project.  (Doc. No. 41-1 at 14, 16; Doc. No. 41-1 at 109:22-111:14; Doc. No. 41-2 at 103:4-11).

- ACCO maintains Harassment Prevention Policies and distributes these policies to its employees.  These policies strictly prohibit discrimination and harassment of any kind and requires all employees to follow reporting guidelines.  (Doc. No. 40-2 at 3 ¶ 16; Doc. No. 40-4 at 3, 13-16, 18-19 ¶¶ 7-9; Doc. No. 41-3 at 9-14; Doc. No. 41-2 at 44, 46; Doc. No. 41-1 at 94:16-20, 95:3-96:17; Doc. No. 41-2 at 85:12-97:9).

- Plaintiff signed an acknowledgement for receipt of ACCO's Employee Handbook which contained a Harassment Prevention Policy, as well as a Partnership Agreement that required Plaintiff to report any "sexual harassment or other form of unlawful harassment immediately to the Director of Human Resources."  (Doc. No. 40-2 at 3 ¶ 17; Doc. No. 40-4 at 3, 13-16, 18-19 ¶¶ 7-9; Doc. No. 41-3 at 9-16; Doc. No. 41-2 at 42-46, 85:12-97:9; Doc. No. 41-1 at 94:16-20, 95:3-96:17).

- ACCO also conducts harassment prevention training for its supervisors and employees. Both Hernandez and Plaintiff completed ACCO's Harassment Prevention Training and are aware of how to identify and report harassment and discrimination at the worksite. (Doc. No. 40-5 at 2, 8 ¶ 5; Doc. No. 40-4 at 4, 21-24 ¶¶ 11-12).

- Plaintiff's claims of discrimination, harassment, and constructive discharge are based exclusively on being assigned to work by himself and seeing the picture in the ACCO trailer on September 29, 2021.  (Doc. No. 40-2 at 4 ¶ 19; *see generally* Doc. No. 41-2 at 35-53; Doc. No. 41-1 at 64:21-65:1, 94:16-20, 95:3-96:17, 96:23-98:19).

- Prior to September 29, 2021, there had been no complaints or incidents reported at ACCO's T-Mobile Project relating to discrimination or harassment of any kind during Plaintiff's employment.  (Doc. No. 40-5 at 4 ¶ 15; Doc. No. 41-1 at 76:17-79:3).

- Plaintiff filed a grievance with the union identifying the picture as his only reason for quitting, but he does not know whether the Union representatives reached out to ACCO about the matter.  (Doc. No. 41-3 at 29; Doc. No. 41-2 at 75:9-76:12, 79:12-82:24).

- In his investigation, Hernandez spoke to a business representative for Local 104, who informed Hernandez that Plaintiff forwarded the photos and that he had resigned from his ACCO employment.  (Doc. No. 40-5 at 6 ¶ 23).

- Other than reporting the picture to Hernandez on the morning of September 29, 2021, Plaintiff did not report any issues to ACCO's Human Resources or its Director.  (Doc. No. 40-2 at 2-3 ¶¶ 7, 9, 15; Doc. No. 41-2 at 85:12-91:8, 91:12-97:9).

## APPLICABLE LAW AND ANALYSIS

### A. Employment Discrimination Based on Race

#### 1. Legal Standard

Title VII forbids certain employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018).  Under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973), a plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination.  *Id*. at 802.  The plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably.  *Id*.  "The burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."  *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (citing *McDonnell Douglas Corp*., 411 U.S. at 802).  If the employer does so, the plaintiff must show that the articulated reason is pretextual "either directly by

1  persuading the court that a discriminatory reason more likely motivated the employer or indirectly

2  by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of*

3  *Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see also Chuang*, 225 F.3d at 1124.

4  2.  Discussion

5  Here, it is undisputed that Plaintiff is a member of a protected class due to African

6  American race.  (Doc. No. 40-2 at 2 ¶ 2).  It is also undisputed that Plaintiff was qualified as a

7  sheet metal worker, given that he was recommended by another ACCO foreman, was retained in

8  his position while other employees were laid off, and received praise from his supervisor for

9  being a good worker.  (*Id*. at 3 ¶¶ 7-8).  Thus, based on the undisputed facts, the first two

10  *McDonnell Douglas* factors are met.

11  Turning to the third *McDonnell Douglas* factor, the Court considers whether Plaintiff was

12  subject to an adverse employment action.  The Ninth Circuit "define[s] 'adverse employment

13  action' broadly," *Fonseca v. Sysco Food Servs. of Ariz.*, 374 F.3d 840, 847 (9th Cir. 2004)

14  (citations omitted), and "take[s] an expansive view of the type of actions that can be considered

15  adverse employment actions." *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (collecting

16  cases and noting that other circuits have found adverse employment actions to include

17  "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative

18  job evaluations and toleration of harassment by other employees"; "moving the person from a

19  spacious, brightly lit office to a dingy closet, depriving the person of previously available support

20  services . . . or cutting off challenging assignments"; requiring a plaintiff to work without lunch

21  break, giving her a one-day suspension, soliciting other employees for negative statements about

22  her, changing her schedule without notification, making negative comments about her, and

23  needlessly delaying authorization for medical treatment.).  Notably, the Ninth Circuit referred in

24  *Henderson* to adverse employment actions as "disadvantageous *changes* in the workplace." 217

25  F.3d at 1240; *see also Michael v. Caterpillar Fin. Servs. Corp*., 496 F.3d 584, 593 (6th Cir. 2007)

26  (noting that a plaintiff in a Title VII disparate treatment suit must show a "materially adverse

27  *change* in the terms and conditions of employment because of the employer's actions" (emphases

28  added).

Plaintiff does not identify what adverse actions he encountered at ACCO, but rather contends his decision to quit his employment with ACCO is prima facie evidence that he was subject to "objectively intolerable working conditions."  (Doc. No. 53 at 15).  Similarly, Plaintiff does not specify what conditions were intolerable, but asserts vaguely that "[l]ooking at the totality of the circumstances[,] individual actions were created by the employer which created an intolerable condition of employment and a reasonable person in Plaintiff's position would choose to resign."  (*Id.*).

Defendant argues that the totality of the circumstances refutes Plaintiff's claim of an intolerable work environment.  (Doc. No. 40-1 at 17).  Plaintiff was praised for his work, was granted his requested days off, was never disciplined or counseled, was spared from a layoff, and never heard racially derogatory remarks at work.  (*Id.* at 17-18).  Defendant argues the fact that Plaintiff saw what he perceived to be as an offensive image at a worksite on one occasion does not suffice to establish severe and pervasive harassment that would support a claim of constructive discharge.  The Court agrees.  As discussed further below, under well-settled Ninth Circuit case law, more is required to demonstrate a hostile work environment.  Thus, to the extent Plaintiff contends that seeing the chimpanzee poster in the ACCO office on a single occasion was an adverse employment action, he fails to satisfy the third *McDonnell Douglas* factor.

To the extent Plaintiff contends that being assigned to work alone was an adverse action, Defendant argues several points in response.  First, Plaintiff was not the only journeyman under Hernandez's supervision to work alone, thus undermining Plaintiff's claim that he was treated differently than other similarly-situated ACCO employees.  (*Id.* at 18).  Second, another African American journeyman steel worker on the team was regularly assigned to work in a pair on larger duct work installations and other tasks that could not be completed by a single journeyman, belying Plaintiff's claim that he was made to work alone because he was African American.  (*Id.*).  Third, Hernandez's favorable treatment of Plaintiff—personally interviewing and hiring him, sparing him from a layoff, praising his work, granting his time off requests—is inconsistent with the claim that Hernandez subjected Plaintiff to discriminatory action.  (*Id.* at 12-13) (citing *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir. 1996) (when the same actor is

responsible for both the adverse act, as well as the favorable act, a strong inference arises that the adverse action was not taken with discriminatory intentions).

The Court finds it significant that Plaintiff's assignment to work on tasks by himself did not arise from a change in the conditions of Plaintiff's employment.  Plaintiff did not begin working in pairs or teams and then was made to work alone.  Throughout his two-month employment with ACCO, Plaintiff was primarily assigned to solo tasks; solo work was a basic parameter of Plaintiff's employment rather than a "disadvantageous change" that would constitute an "adverse employment action."  *See Henderson*, 217 F.3d at 1240.

Even assuming the Court finds that being assigned to work alone was an adverse employment action, the undisputed facts show that at least one other non-African American sheet metal worker was also assigned to work primarily alone, and that the other African American sheet metal worker worked primarily in a two-man team, which weakens the inference that Plaintiff was being treated disparately based on his race.  If anything, Plaintiff's claim that two people were sometimes assigned to complete tasks that Hernandez assigned to Plaintiff alone is consistent with Hernandez's testimony that he considered Plaintiff particularly competent and a valuable employee.  And given the ample evidence that Hernandez and ACCO otherwise treated Plaintiff well throughout his brief tenure, the Court finds that Plaintiff has not made a prima facie case of race-based disparate treatment sufficient to shift the burden to Defendant to establish a non-discriminatory motive for its conduct.

### B. Hostile Work Environment

#### a. Legal Standard

Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  To state a cognizable hostile work environment claim under Title VII, the plaintiff must show (1) that he was subjected to verbal or physical conduct because of his race; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.  *Pinder v. Emp. Dev. Dep't*, 227 F. Supp. 3d 1123, 1143 (E.D. Cal. 2017).  "To be actionable, the objectionable environment

16

1  must be both objectively and subjectively offensive." *Stonum v. Cnty. of Kern*, 2017 WL

2  1079757, at *8 (E.D. Cal. Mar. 21, 2017) (citing *Harris*, 510 U.S. at 21–22, and *Reynaga v.*

3  *Roseburg Forest Products*, 847 F.3d 678, 687 (9th Cir. 2017).

4      "Occasional or isolated incidents, unless especially severe, are insufficient" to support a

5  Title VII claim." *Jackson v. Board of Equalization*, 2010 WL 3733983, at *10 (E.D. Cal. Sept.

6  20, 2010); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000).  To determine

7  whether discriminatory conduct is sufficiently severe or pervasive, the Court must consider the

8  totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity;

9  whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it

10  unreasonably interferes with an employee's work performance." *Ramirez-Castellanos v. Nugget*

11  *Mkt., Inc*., 2020 WL 2770060, at *7 (E.D. Cal. May 28, 2020) (citing *Vasquez v. County of Los*

12  *Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)).

13      b.  Discussion

14      To the extent discernible, Plaintiff bases his claim of a hostile work environment primarily

15  on the incident on September 29, 2021.  He states that he found the poster in the ACCO office

16  "offensive and highly inappropriate," and was so distressed by it that he left the work site

17  immediately, never returned, and subsequently resigned.  (Doc. No. 1 at 2).  Further, Plaintiff

18  asserts that he suffered anxiety after the incident and sought medical care and prescription

19  medication for his distress.  (*Id*.).

20      Ninth Circuit case law cited by Defendant, however, makes clear that similar conduct does

21  not rise to the level of a hostile work environment.  In *Gregory v. Widnall*, the Ninth Circuit

22  found that a "single drawing of a monkey on a memo circulated to senior NCOs [non-

23  commissioned officers], accompanied by the verbal explanation that it was intended to remind

24  officers not to 'get the monkey off their back' by passing their responsibilities to others" did not

25  amount to a hostile work environment for the African American plaintiff, even though he also

26  alleged several other instances of disparate treatment.  153 F.3d 1071, 1074-75 (9th Cir. 1998)

27  (per curiam).

28      By contrast, the Ninth Circuit found in *McGinest v. GTE Service Corp*., 360 F.3d 1103,

17

1113 (9th Cir. 2004) that the plaintiff adequately alleged a hostile work environment where he saw racist graffiti (including the N-word) in locations throughout the employer's facility on multiple occasions, a picture defaced by having the first word of "Black History Month" replaced by the N-word, and plaintiff was so offended by seeing racist graffiti in the men's bathroom that he stopped using it.  *Id.* at 1110-11.  Further significant was plaintiff's allegations that his supervisor required him to work under dangerous conditions without proper equipment, that his supervisor and co-workers frequently made racist comments, and that management knew about the racist graffiti yet did not paint over it, publicly condemn, it or investigate its source.  *Id.* at 1118.

Unlike the plaintiff in *McGinest*, Plaintiff here bases his hostile work environment claim on a single instance of an insensitive and possibly racist poster being left on the wall of the ACCO trailer, which the Court does not find sufficiently "severe" by itself to sustain a hostile work environment claim.  *See Jackson*, 2010 WL 3733983 at *10.  The other factors cited by the Ninth Circuit as guideposts for determining the presence of a hostile work environment likewise do not support the finding that Plaintiff was subjected to one here.  *See Vazquez,* 349 F.3d at 642.  Rather than multiple events spanning over time, Plaintiff cites only one incident on a single date.  The undisputed facts establish that the incident was not "physically threatening or humiliating"; indeed, other than Plaintiff briefly crossing paths with an unidentified individual in the trailer on September 29, 2021, the incident did not involve any interactions with others; nor did the poster obviously target Plaintiff in any way that would indicate a threat to his safety.  And while Plaintiff was subjectively distressed by finding the poster, it contained no incendiary or racist language.  Nor did ACCO and its employees act with indifference after Plaintiff reported the poster.  Hernandez responded promptly to Plaintiff's report, began an investigation, and attempted multiple times to contact Plaintiff to collect further information without success.  (Doc. No. 40-5 at 5-6 ¶¶ 21-24).  Unlike the employer in *McGinest*, ACCO did not ignore Plaintiff's allegations but instead promptly sought to investigate and resolve them.

In sum, the Court finds that Plaintiff discovering a poster with potential racial undertones on one occasion is insufficiently severe to establish a hostile work environment.  Plaintiff

1  provides no evidence to support the inference that such conduct was severe or pervasive; indeed,

2  it appears to have been limited to this single incident, which cannot even conclusively be

3  attributed to the actions of any ACCO employee.  Particularly given that Plaintiff's supervisor

4  responded diligently as soon as Plaintiff reported the incident, the Court finds no genuine dispute

5  that Plaintiff was not subject to a hostile work environment by ACCO.

6       **C. <u>Constructive Discharge</u>**

7         1. <u>Legal Standard</u>

8      A constructive discharge occurs when, looking at the totality of circumstances, "a

9  reasonable person in [the employee's] position would have felt that he was forced to quit because

10  of intolerable and discriminatory working conditions."  *Satterwhite v. Smith*, 744 F.2d 1380, 1381

11  (9th Cir. 1984); *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982).  "An isolated incident of

12  mistreatment is not enough; [a plaintiff has] to show aggravating factors such as a continuing

13  pattern of discriminatory treatment."  *Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir.

14  2000).

15         2. <u>Discussion</u>

16      Defendant claims that, because Plaintiff fails to establish either disparate treatment or a

17  hostile work environment, his constructive discharge claim necessarily fails.  (Doc. No. 40-1 at

18  23).  Alternatively, Defendant argues that even if Plaintiff was subjected to some degree of

19  unwelcome treatment, it did not rise to the level that a reasonable person would have felt

20  compelled to resign.  (*Id.*).

21      In his briefing, Plaintiff does not specify on what basis Defendant's actions amounted to

22  constructive discharge.  He again relies on conclusory language, asserting that "[h]ere the plaintiff

23  can demonstrate the severe or pervasive harassment necessary to support a hostile work

24  environment . . . [and] the Plaintiff can establish a claim that suggest[s] that his working

25  conditions became so intolerable that he reasonably felt compelled to resign."  (Doc. No. 53 at

26  17).  Plaintiff does not, however, support either of these assertions by citing to facts in the record

27  or even specifying what facts the claims are based on.

28      As discussed above with respect to Plaintiff's other Title VII claims, the Court finds the

undisputed facts do not establish that Plaintiff suffered "intolerable [or] discriminatory working conditions" during his brief tenure at ACCO.  *Satterwhite*, 744 F.2d at 1381.  While Plaintiff was unhappy that he was assigned to work alone on most days, the Court is unpersuaded that by itself, this would compel a reasonable person to resign.  Further, the overwhelming evidence indicates that Plaintiff did not quit because of Hernandez's assignment.  He uncomplainingly accepted those assignments for two months, and then quit immediately after discovering the offensive poster on September 29, 2021.  As discussed above, the undisputed facts refute the claim that Plaintiff experienced a pattern of negative or discriminatory treatment.  Rather, Plaintiff was praised by his supervisor, was retained during a layoff, and had his requested time off approved. (Doc. No. 40-2 at 2-3 ¶¶ 8-9).

Instead, the undisputed facts demonstrate at best "[a]n isolated incident of mistreatment" in which an unknown individual placed an insensitive poster in an ACCO trailer.  *Huskey*, 204 F.3d at 900.  An isolated incident, particularly one that is offensive but not obviously severe, falls short of the showing required for a constructive discharge claim.  *Jackson*, 2010 WL 3733983 at *10.  Because the undisputed facts establish no more than such an isolated incident, Defendant is entitled to summary judgment on Plaintiff's constructive discharge claim.

**D. Punitive Damages**

In a Title VII employment discrimination action, 42 U.S.C. § 1981a(b)(1) provides that:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

*See also Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 529–30 (1999) (noting that "Punitive damages are limited . . . to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'").

As set forth above, the undisputed facts do not support any basis for liability against Defendant ACCO under Title VII.  There is no genuine dispute that ACCO and its employees did

20

1   not subject Plaintiff to any adverse employment actions based on his race, to a hostile work

2   environment, or take any other actions that amounted to a constructive discharge.  Thus, the

3   undersigned recommends the District Court deny, or find moot Plaintiff's claim for punitive

4   damages because, without any underlying claim against ACCO, his prayer for punitive damages

5   necessarily fails.  *See Meaux v. Nw. Airlines, Inc.*, 718 F. Supp. 2d 1081, 1093 (N.D. Cal. 2010),

6   aff'd, 490 F. App'x 58 (9th Cir. 2012) (granting adjudication at summary judgment that no

7   punitive damages were available on plaintiff's remaining discrimination claim because it did not

8   rise to the level of "willful and egregious" conduct.)

9                          **CONCLUSION AND RECOMMENDATION**

10          For the reasons set forth above, the Court finds there is no genuine dispute of material fact

11   that Plaintiff did not suffer any adverse employment action, did not experience a hostile work

12   environment, and that a reasonable person in his position would not have felt obligated to resign

13   his position at ACCO.  While Plaintiff was distressed on September 29, 2021 to discover an

14   image that he personally found offensive hanging in the ACCO trailer, under Ninth Circuit case

15   law a single offensive image, unaccompanied by a pattern of racially-charged or adverse

16   employment actions is insufficient to establish a Title VII claim.

17          Accordingly, it is **RECOMMENDED**:

18          1.   Defendant's Motion for Summary Judgment (Doc. No. 40) be **GRANTED**.

19          2.   Plaintiff's Complaint be dismissed with prejudice.

20          3.   The Clerk of Court enter judgment in Defendant's favor and close this case.

21                          **NOTICE TO PARTIES**

22          These Findings and Recommendations will be submitted to the United States District

23   Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

24   after being served with a copy of these Findings and Recommendations, a party may file written

25   objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned,

26   "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen**

27   **(15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party

28   wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its

                                            21

CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).


Dated:    October 23, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

22